**Jose Ruben FLORES, Appellant,**

v.

**Beatriz Martinez CONTRERAS, Appellee.**

No. 04–97–00742–CV.

Court of Appeals of Texas, San Antonio.

June 17, 1998.

Rehearing Overruled Sept. 10, 1998.

Tony Jimenez, III, Jorge G. Aristotelidis, San Antonio, for Appellant.

Luther H. Soules, III, Bruce K. Spindler, Robinson C. Ramsey, Soules & Wallace, P.C., San Antonio, for Appellee.

Before HARDBERGER, C.J., and RICKHOFF and ANGELINI, JJ.

## OPINION

RICKHOFF, Justice.

This case of first impression for Texas requires interpretation of the International Child Abduction Remedies Act ("ICARA"), 42 U.S.C. §§ 11601–11610 (1988).

Jose Ruben Flores ("Jose") appeals the order of the trial court to return his son, Ruben Ramon Flores ("Ruben") to Mexico under the Hague Convention on the Civil Aspects of International Child Abduction and ICARA, its implementing legislation. The court determined that Mexico was the habitual residence of the child and that Jose wrongfully retained Ruben when Ruben's

mother, Beatriz Martinez Contreras, brought him to San Antonio for a visit. In his sole issue Jose challenges the sufficiency of the evidence to support the finding that Ruben's habitual residence was Mexico. We affirm the judgment of the trial court.

## PROCEDURAL HISTORY

Jose Flores, an American citizen and San Antonio resident, went to Mexico ostensibly seeking romance. He ran radio spots on a Mexico City-area radio station; Beatriz Martinez Contreras ("Beatriz"), a resident of Toluca, Mexico, responded to the spots. Jose went to Toluca to court her two or three days a month. When Beatriz became pregnant, the visits dropped off although cards and letters continued to come. Ruben Ramon Flores ("Ruben"), was born September 24, 1996. The child was registered by both his parents as a Mexican citizen living in Toluca; the birth certificate acknowledges Jose as the father. Ruben also was registered as the child of an American born abroad and given an American passport.

Ruben lived with his mother for 50 days in Toluca until they came to San Antonio in November 1996; mother left without the child in December. Beatriz contends she came for a two-week vacation (a two-week visa is in evidence) and stayed until Jose and his ex-wife, with whom he was living at the time, forced her to leave the country without her child. Jose contends she came to San Antonio to marry him, changed her mind and left the child with him willingly. Beatriz began working to secure the return of her child upon her return to Mexico. She eventually caused this petition to be filed in a Bexar County district court. Jose counterclaimed with a Suit Affecting the Parent–Child Relationship. The evidence presented by Beatriz suggests his real motivation was to father a child, remove the child to the states, and raise the child without the encumbrances of the natural mother.

The case was tried to the court on June 27, 1997. The court ordered return of the child to Beatriz and dismissed Jose's counterclaim. In its order, the court entered findings that Beatriz was actually exercising custody of Ruben at the time of her travel to San Anto-

nio, that Jose had wrongfully retained the child, and that Ruben was habitually residing in Mexico immediately before Jose's wrongful retention. The court dismissed Ruben's SAPCR counterclaim for want of jurisdiction. The court overruled Jose's motion for new trial after a hearing.

## THE HAGUE CONVENTION

The Hague Convention attempts to "protect children internationally from the harmful effects of their wrongful removal or retention and to establish procedures to ensure their prompt return to the state of their habitual residence, as well as to secure protection for rights of access." Hague Convention, Preamble. Both Mexico and the United States are signatories to the convention.

Retention or removal of a child is wrongful under the Hague Convention where:

(a) it is in breach of rights of custody attributed to a person ... under the law of the State in which the child was habitually resident immediately before the removal or retention; and

(b) at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.

Hague Convention, Article 3. The convention thus seeks to restore the "factual" status quo which is unilaterally altered when a parent abducts a child and aims to protect the legal custody rights of the non-abducting parent. Hague International Child Abduction Convention; Text and Legal Analysis, 51 Fed. Reg. 10494, 10505 (1986). This is in contrast to other uniform acts, such as the Uniform Child Custody Jurisdiction Act, which require a court decree to be operative. *Id.*

█ ICARA is the Hague Convention implementing legislation in the United States. It grants concurrent jurisdiction to state and federal courts to determine only the merits of any abduction claim; it does not grant jurisdiction to reach the underlying custody dispute. 42 U.S.C.A. § 11603(a); *Friedrich v. Friedrich,* 983 F.2d 1396, 1400 (6th Cir. 1993). These remedies apply with equal force to the offspring of a union not yet

sanctioned by formal marriage. *Falls v. Downie,* 871 F.Supp. 100, 101 (D.Mass.1994).

Although ICARA has not been construed in Texas or the Fifth Circuit, there are numerous federal cases interpreting the statute which we will use for guidance.

■ In order to invoke Hague Convention relief, a petitioner must satisfy two conditions: 1) the petitioner must have lawful rights of custody at the time of the removal or retention, and 2) such removal or retention must be from the child's "habitual residence." *Meredith v. Meredith,* 759 F.Supp. 1432, 1434 (D.Ariz.1991). Jose attacks the second prong of this formulation, arguing the trial court erred as a matter of law in finding that Ruben's habitual residence was Mexico. We therefore turn to the question of the child's habitual residence.

### HABITUAL RESIDENCE

Jose argues the threshold determination of habitual residence is dispositive of this appeal. We agree. Neither the Hague Convention nor ICARA apply unless a child has been removed or withheld from the child's habitual residence. *Falls,* 871 F.Supp. at 102; *Meredith,* 759 F.Supp. at 1437.

### 1. Defining the Term

The term "habitual residence" is nowhere defined in the convention or ICARA; rather, it is a concept intended to be applied to the facts and circumstances of each case. *Rydder v. Rydder,* 49 F.3d 369, 373 (8th Cir. 1995).

One of the most quoted sources on interpreting the concept of habitual residence is *In re Bates (a Minor),* No. CA 122.89, High Court of Justice, United Kingdom (1989), which states that a "degree of settled purpose" is essential to determining habitual residence:

> All that the law requires is that there is a settled purpose. That is not to say that the propositus intends to stay where he is indefinitely. Indeed his purpose while settled may be for a limited period ... All that is necessary is that the purpose of living where one does has a sufficient degree of continuity to be properly described as settled.

The case goes on to say that the concept of habitual residence should not be hedged about with technicalities: "The facts and circumstances of each case should continue to be assessed without resort to presumptions or presuppositions." *Id.*

■ Federal courts are in agreement that to determine the habitual residence, the court must focus on the child, not the parents, and examine past experience, not future intentions. *Friedrich,* 983 F.2d at 1401. Future intentions harbored by one parent are irrelevant to the court's inquiry. *Id.* A child's habitual residence is the place where he or she has been physically present for an amount of time sufficient for acclimatization and which has a "degree of settled purpose" from the child's perspective. *Feder v. Evans–Feder,* 63 F.3d 217 (3rd Cir.1995).

### 2. The Standard of Review

■ When determining habitual residence, the trial court sitting as trier of fact is required to undertake a fact-intensive inquiry and from that inquiry draw a legal conclusion. We believe this presents a classic mixed question of law and fact.

■ When a matter involving both factual determinations and legal conclusions is decided by the trial court, Texas courts generally employ the abuse of discretion standard. *Pony Express Courier Corp. v. Morris,* 921 S.W.2d 817 (Tex.App.—San Antonio 1996, no writ). By applying the abuse of discretion standard, the reviewing court defers to the trial court's factual determinations while properly fulfilling its role to determine questions of law *de novo. See Walker v. Packer,* 827 S.W.2d 833, 839–840 (Tex.1992)(describing appellate review of the trial court's legal determinations as less deferential than review of factual determinations); *see also Downer v. Aquamarine Operators Inc.,* 701 S.W.2d 238, 241–242 (Tex. 1985).

### 3. Application

■ The facts are not in dispute in this appeal; the legal conclusion drawn from those facts is. Jose urges a different result based on his reading of a Mexican child-

custody statute which he says requires six months' residence in a place to establish habitual residence. Because the child was only 50 days old when he came to San Antonio, Jose argues, he could not have established habitual residence in Mexico. We find his argument flawed for several reasons.

First, federal courts do not rely on the source law of the country from which the child was allegedly abducted or retained in determining habitual residence; this inquiry is undertaken to determine if the petitioning parent had custody rights which the responding parent interfered with by reason of the wrongful removal or retention. *Feder v. Evans–Feder,* 63 F.3d at 225; *Friedrich,* 983 F.2d at 1401; *Meredith,* 759 F.Supp. at 1434.

Even if the law of the country is relevant in establishing habitual residence, moreover, Jose did not contest at trial the affidavit of Cardenas' choice of law expert. Ricardo Camara Sanchez, an attorney licensed in Mexico who works for the Mexican Central Authority for Child Abduction, testified by affidavit that the statute cited by Jose refers to the habitual residence of the *parents* involved in a custody dispute, not the habitual residence of the child. There was no evidence before the trial court that the laws of Mexico required six months' residence by the child before a child's habitual residence may be established.

■ Finally, and perhaps most importantly, Jose's reading of ICARA is not logical or fair. Under his reading, Mexican children under six months of age, or who had recently moved, would be unprotected by the Hague Convention and ICARA. Courts should not interpret statutes to create an absurd result. *Barshop v. Medina Underground Water Conservation Dist.,* 925 S.W.2d 618, 629 (Tex.1996).

It is undisputed that Ruben lived with his mother for the first 50 days of his life. We find this was sufficient to establish habitual residence in Toluca within the meaning of the Hague Convention. Whatever his original intentions may have been, it is, of course, commendable that Jose feels a compelling interest for his son. His energies must now be directed toward negotiating with the mother he chose for the child or with the court where the custody issues will be resolved.

We therefore find that the trial court did not abuse its discretion in determining that the child's habitual residence was Toluca, Mexico for purposes of this proceeding. Finding no error, Jose's sole issue is overruled, and the judgment of the trial court is in all things affirmed.