Maria Guadalupe Sosa
**RAZO, Appellant,**

v.

**Hector Cuevas VARGAS, Appellee.**

**No. 01–09–00660–CV.**

Court of Appeals of Texas,
Houston (1st Dist.).

Nov. 10, 2011.

---

Maria Elena Navarro, Law Office of M. Elena Navarro, Timothy A. Hootman, Houston, TX, for Appellant.

Scott Robert Dayton, Sylvia Ann Mayer, Weil, Gotshal, Manges LLP, Houston, TX, for Appellee.

Panel consists of Justices KEYES, SHARP, and MASSENGALE.

## OPINION

EVELYN V. KEYES, Justice.

This is an appeal from orders of the trial court in an international child custody dispute. Appellee Hector Cuevas Vargas ("Hector") registered the decrees of a Mexican civil court regarding custody of the child, G.S., in Texas state court and asked that they be confirmed and enforced. Appellant Maria Guadalupe Sosa Razo ("Maria") asked for a hearing to contest the validity of the registered decrees and filed a supplemental petition requesting that she be appointed sole managing conservator of G.S. The trial court (1) denied Maria the right to an evidentiary hearing on her affirmative defenses to confirmation and enforcement of the Mexican court's decrees; (2) held a non-evidentiary hearing at which Hector appeared through counsel and argued that the decrees be enforced and that Maria should not be allowed to present evidence; (3) signed orders confirming the Mexican court's decrees and ordering their immediate enforcement and issued a writ of attachment for G.S.; (4) granted the special appearance filed by Hector with respect to Maria's supplemental petition, concluding that Hector was not subject to the jurisdiction of Texas; and (5) dismissed Maria's supplemental petition with prejudice. Maria appeals.

In seven issues, Maria argues that (1) the trial court's order confirming the decrees issued by the Mexican court and registered by Hector is void; (2) the trial court's order enforcing the Mexican court's decrees filed by Hector and ordering that G.S. be seized by any sheriff or constable in Texas and turned over to the possession of Hector's counsel is void; (3) and (4) the trial court erred in signing the orders of confirmation and enforcement when Hector offered no evidence to meet his initial burden of proof beyond offering a properly authenticated copy of the orders he intended to have confirmed;[1] (5) the evidence is legally insufficient to support the trial court's confirmation and enforcement orders; (6) the trial court erred in not allowing Maria to present evidence at the confirmation and enforcement hearing; and (7) the trial court erred in sustaining Hector's special appearance and dismissing with prejudice Maria's supplemental petition.

We modify the trial court's order dismissing Maria's supplemental petition and affirm as modified, and we reverse the trial court's orders confirming and enforcing the Mexican orders and remand for further proceedings consistent with this opinion.

## Background

Maria and Hector were married in Mexico on July 28, 1999. Their daughter G.S. was born in Mexico during the marriage.

---

1. The Texas Family Code provides that a party seeking to confirm and enforce a foreign order must file "a statement under penalty of perjury that to the best of the knowledge and belief of the person seeking registration the order has not been modified." TEX. FAM.CODE ANN. § 152.305(a)(2) (Vernon 2008).

On March 16, 2004, a Mexican civil court in the State of Guanajuato, Mexico, signed a mutual consent judgment of divorce that incorporated a February 9, 2004 agreement signed by both Maria and Hector concerning custody and visitation rights over G.S. (the "Custody Agreement"). This agreement provided that G.S. would spend summer and winter vacations in Mexico with Hector in the town of Valle de Santiago, Guanajuato, but would spend the rest of the year with Maria at a specific address in Houston, Texas (the "Houston address"). The Custody Agreement further provided that if a party breached its terms, sole custody of G.S. would vest in the non-breaching party (the "Agreed Penalty Provision"). The judgment specifically provided that the parties must abide by its provisions, "which has the force of res judicata, taking into consideration the settlement reached in the second conciliation meeting concerning their minor daughter."

No party disputes these recitals in the Mexican decree. However, the parties do dispute what occurred next. According to Hector, in December 2004, when he called Maria to ask about the date of G.S.'s winter vacation so he could exercise his visitation rights, one of her relatives answered the call and told him that Maria was not at home. After Maria did not contact Hector regarding the dates of G.S.'s vacation, Hector learned the dates from a Houston relative and traveled to Houston to pick up G.S. He arrived at the Houston address and was told by one of Maria's relatives that Maria and G.S. did not live there anymore and that she did not know their whereabouts. Hector tried again the next day but was told by a different relative that G.S. did not live there. Hector then went to the Mexican Consulate in Houston to report that he could not locate his daughter and that Maria had breached the Custody Agreement.

Maria claims that she had witnesses who would challenge the veracity of all these statements.

The record reflects that Hector returned to Mexico and the Mexican court that issued the original divorce decree. Maria was served by publication in Mexico with notice of a hearing concerning child custody. Maria did not appear in this proceeding. Hector invoked the Agreed Penalty Provision and asked for sole custody of G.S. The Mexican court determined that Hector had proved Maria had breached the Custody Agreement, and it further found that her whereabouts were unknown and that she had been properly served by publication in accordance with Mexican law. On May 31, 2005, the Mexican court entered an order granting Hector sole custody of G.S. (the "Sole Custody Order").

Hector then registered the Mexican court's orders in the 310th District Court in Harris County, Texas, pursuant to Section 152.305 of the Family Code. *See* TEX. FAM.CODE ANN. § 152.305 (Vernon 2008). Maria requested a hearing to contest the validity of the registered decrees. Hector moved to confirm and enforce the Sole Custody Order. Maria filed a "Supplemental Petition" asking the court (1) to declare that the two Mexican orders sought to be confirmed and enforced are unenforceable and void and (2) to appoint Maria as sole managing conservator of G.S. In response, Hector specially appeared.

The trial court held a non-evidentiary hearing on these issues. Maria's attorney repeatedly requested that the court hear testimony before ruling, but the court refused. Maria's attorney then put on a bill of exceptions describing the available witnesses and outlining their proposed testimony. Maria's counsel explained that he would have called Maria herself, as well as her husband, José Bonilla, her brother,

Sidro Sosa, her sister, also named Maria Sosa, her sister's husband, José Sosa, and her mother, Otilia Roso. Sidro and Maria would have testified that Maria did live at the Houston address "at the time in question," and only moved to a new location nearby within two or three years before the confirmation and enforcement hearing. Maria would have testified that her family members live at the Houston address, that she now lives less than two blocks away from that address, and that she has "daily contact with the people at that address." Maria's counsel further informed the trial court that Maria's family members would have testified that, had Maria been served at the Houston address and not been present to accept service, they would have immediately given any documents to Maria.

On the day of the hearing, the court signed an order confirming the Mexican orders. The next day, the court granted Hector's special appearance and dismissed Maria's supplemental petition with prejudice. On July 27, 2009, the trial court signed an order enforcing the two Mexican orders and issuing a writ of attachment, requiring that G.S. be delivered to Hector's attorneys.

## Standard of Review

When a matter involving both factual determinations and legal conclusions is decided by the trial court, we review the trial court's decision for an abuse of discretion. *Flores v. Contreras,* 981 S.W.2d 246, 249 (Tex.App.-San Antonio 1998, pet. denied). In applying the abuse of discretion standard, we defer to the trial court's factual determinations while determining questions of law de novo. *See Walker v. Packer,* 827 S.W.2d 833, 839–40 (Tex.1992) (orig. proceeding) (stating that appellate review of trial court's legal determinations is "much less deferential" than review of

factual determinations); *see also Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985).

█  In a family law case, the abuse of discretion standard of review "overlaps with the traditional sufficiency standard of review." *Boyd v. Boyd,* 131 S.W.3d 605, 611 (Tex.App.-Fort Worth 2004, no pet.). Legal and factual insufficiency are not "independent reversible grounds of error" but are relevant factors in assessing whether the trial court abused its discretion. *Id.* A trial court may be reversed for abusing its discretion only when we find that the court acted in an unreasonable or arbitrary manner. *See Downer,* 701 S.W.2d at 241–42 (holding that mere fact that trial court may decide discretionary matter differently from appellate court does not demonstrate abuse of discretion). In other words, an abuse of discretion occurs when a trial court acts without reference to any guiding rules and principles. *Beaumont Bank, N.A. v. Buller,* 806 S.W.2d 223, 226 (Tex.1991).

## The Necessity of an Evidentiary Hearing Before Ruling on the Confirmation and Enforcement Orders

In her first, second, and sixth issues, Maria argues that the trial court abused its discretion by ruling on the confirmation and enforcement of the Mexican court's decrees without allowing her to present evidence on her affirmative defenses and that the resulting confirmation and enforcement orders are therefore void. We consider these issues together.

The Family Code provides for a procedure whereby a foreign child custody determination may be registered in this state and thus become enforceable. *See* TEX. FAM.CODE ANN. § 152.305. First, a party must send a request to the appropriate court, along with (1) two copies (one certified) of the determination sought to be

registered; (2) a sworn statement that the order sought to be registered has not been modified; and (3) the name and address of the person seeking registration and any other parent or person who has been awarded custody or visitation in the order sought to be registered. *Id.* § 152.305(a).

Next, the registering court causes the determination to be filed as a foreign judgment and serves notice upon the interested parties, providing them with an opportunity to contest the registration "in accordance with this section." *Id.* § 152.305(b). The notice, among other things, must tell all parties that a hearing to contest the validity of the registered determination must be requested within twenty days after the service of the notice. *Id.* § 152.305(c)(2). It also must tell the interested parties that failure to contest the registration results in an automatic confirmation of the determination and precludes further contest of the determination. *Id.* § 152.305(c)(3).

If an interested party requests a hearing, the Family Code requires the trial court to confirm the registered order unless the party contesting it establishes one of three things: (1) that the issuing court did not have jurisdiction under Subchapter C of the UCCJEA; (2) that the determination sought to be registered has been "vacated, stayed, or modified" by a court having jurisdiction to do so; or (3) that the person contesting registration was entitled to notice, "but notice was not given in accordance with the standards of Section 152.108, in the proceedings before the court that issued the order for which registration is sought." *Id.* § 152.305(d). Family Code section 152.108(a) provides:

Notice required for the exercise of jurisdiction when a person is outside this state may be given in a manner prescribed by the law of this state for service of process or by the law of the state in which the service is made. Notice must be given in a manner reasonably calculated to give actual notice but may be by publication *if other means are not effective.*

*Id.* § 152.108(a) (Vernon 2008) (emphasis added). If personal service or service by registered or certified mail is not successful, Texas Rule of Civil Procedure 106 provides that, upon motion and supporting affidavit by the party seeking service, the court may authorize service by leaving a copy of the petition with anyone over sixteen years of age at the location specified in the affidavit or service "in any other manner that the affidavit or other evidence before the court shows will be reasonably effective to give the defendant notice of the suit." TEX.R. CIV. P. 106(b).

As Hector points out, Section 152.305 does not specifically require that the trial court hold an evidentiary hearing. The question thus becomes whether, under the facts of this case, the trial court abused its discretion by failing to allow evidence during the confirmation and enforcement hearing.

In the absence of evidence, a hearing is a summary disposition of a case, which is the exception under our rules of civil procedure. *Jack B. Anglin Co. v. Tipps,* 842 S.W.2d 266, 269 (Tex.1992) (orig. proceeding). "Ordinarily, contested issues are decided after a plenary hearing, that is, a hearing at which witnesses present sworn testimony in person or by deposition rather than by affidavit." *Id.* A hearing on a motion for summary judgment, for example, where no testimony is allowed at the hearing, is an exception to this general rule. *Id.* In a situation in which an evidentiary hearing is not specifically required by statute, the issue turns on whether material facts necessary to determine the issue at hand are controverted. *Id.* If not, a trial court may sum-

marily decide the issue; if so, "the trial court must conduct an evidentiary hearing to determine the disputed material facts." *Id.*

The Texas Supreme Court laid down this rule in the context of when to grant an evidentiary hearing to determine the applicability of an arbitration provision in an agreement. *See id.* at 267. In that situation, if a party contests the applicability of an agreement to arbitrate, a court has statutory authority to "summarily determine that issue." *See* TEX. CIV. PRAC. & REM.CODE ANN. § 171.021(b) (Vernon 2011). Even in light of such authority, however, the supreme court held that contested issues of fact could not be "summarily" disposed of without an evidentiary hearing. *See Jack B. Anglin Co.,* 842 S.W.2d at 269.

The Dallas Court of Appeals came to a similar conclusion in a case more nearly on point. *See Hennessy v. Marshall,* 682 S.W.2d 340, 343–45 (Tex.App.-Dallas 1984, no writ). In *Hennessy,* the parties disputed the recognition and enforcement of an English judgment under the Uniform Foreign Country–Money Judgment Recognition Act (the "Recognition Act") and the Uniform Enforcement of Foreign Judgments Act (the "Enforcement Act"). *See* Act of May 31, 1981, 67th Leg., R.S., ch. 808, § 5, 1981 Tex. Gen. Laws 3069, 3069–71, *repealed by* Act of May 17, 1985, 69th Leg., R.S., ch. 959, § 9, 1985 Tex. Gen. Laws 3242, 3322 (Recognition Act); Act of May 14, 1981, 67th Leg., R.S., ch. 195, 1981 Tex. Gen. Laws 464, 464–65, *repealed by* Act of May 17, 1985, 69th Leg., R.S., ch. 959, § 9, 1985 Tex. Gen. Laws 3242, 3322 (Enforcement Act). The question presented to the Dallas court was "whether the English judgment can be recognized under the Recognition Act and enforced under the Enforcement Act absent a plenary suit and hearing." *Hennessy,* 682 S.W.2d at 342. The court held that the judgment

should not have been so recognized and enforced and, therefore, the trial court's order of recognition was void. *Id.*

As in this family law case, the process for the recognition of a foreign judgment began by filing an authenticated copy of the foreign judgment with a court. *Hennessy,* 682 S.W.2d at 343. The Recognition Act as written at the time provided that qualifying foreign judgments would be recognized and enforced in this state "in the same manner as the judgment of a sister state." *Id.* However, the statute also listed seven grounds for nonrecognition, including lack of notice of the proceedings. *Id.* at 343–44. The Dallas court held as follows:

> Obviously, these criteria for nonrecognition can be established only in a plenary hearing by the judgment holder against the judgment debtor. Absent such a plenary hearing, the defendant has not had an opportunity to present the matters set forth in section 5 [of the Recognition Act], some of which are in the nature of affirmative defenses and some of which the party seeking recognition of the foreign country judgment must affirmatively establish.

*Id.* As no plenary hearing was held, the Dallas court held the trial court's order was void and, thus, that all subsequent orders from the trial court were void as well. *Id.* at 345.

Hector argues that nothing in the Family Code requires an evidentiary hearing, but instead only a "hearing" is required. He further argues that, had the Legislature intended for there to be an evidentiary hearing, it would have expressly allowed for it, "as it has done with the current version of the statute that was at issue in *Hennessy.*"

The earlier Recognition Act, however, which the Dallas court construed in *Hennessy,* did not specifically require an evi-

dentiary hearing either, and yet the Dallas court held that such a hearing was required to establish the grounds for nonrecognition. Moreover, when the legislature revised the Recognition Act, it specifically provided that a party may ask for an "evidentiary hearing," but that the court has discretion to allow it or not. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 36.0044(e) (Vernon 2008).

■ We hold that the trial court abused its discretion by failing to hold an evidentiary hearing. Maria filed a "Request for Hearing to Contest Validity of Registered Determination" in which she asserted that the Mexican court lacked jurisdiction to issue the Sole Custody Order because she was not given notice and an opportunity to be heard in the child custody proceeding. At the confirmation hearing, she was present with family members and asked the trial court to allow her to put on testimony. The trial court refused to permit testimony. Her attorney made a bill of exceptions in which she showed the court what evidence would have been presented.

In the bill of exceptions, Maria's attorney stated that he would have called Maria and her brother, Sidro, who would have testified that, although Maria later moved to a different house close to the Houston address, she actually lived at the Houston address "at the time in question." Maria would have testified that her family members live at the Houston address and that she now "lives less than two blocks away and has daily contact with the people at that address." Maria's current husband, her sister, her sister's husband, and her mother all would have testified that they also lived at the Houston address and that if Hector had attempted to serve Maria at that address and Maria was not present to accept service, they would have immediately given any documents to Maria.

The testimony of Maria's proposed witnesses is relevant to her affirmative defense that she did not receive notice of the Mexican proceeding regarding her alleged breach of the Custody Agreement. Family Code section 152.305(d)(3) allows a party to avoid confirmation of a foreign order if she can establish that "notice was not given in accordance with the standards of [Family Code] Section 152.108, in the proceedings before the court that issued the order for which registration is sought." TEX. FAM.CODE ANN. § 152.305(d)(3). Section 152.108 provides that notice may be given in accordance with the laws of Texas or the laws of the state in which service is made, but regardless of which jurisdiction's service laws are applied, notice "must be given in a manner reasonably calculated to give actual notice...." *Id.* § 152.108(a); *see Livanos v. Livanos,* 333 S.W.3d 868, 877 (Tex.App.-Houston [1st Dist.] 2010, no pet.) (noting that pursuant to section 152.108, party must follow service requirements of Texas or state in which service is made *and* ensure that respondent is served in manner reasonably calculated to give actual notice). This section specifically allows notice to be given by publication, but only if "other means are not effective." TEX. FAM.CODE ANN. § 152.108(a).

Texas Rule of Civil Procedure 106 allows a party, upon motion and supporting affidavit, to request alternate methods of service if personal service or service by registered or certified mail is not successful. TEX.R. CIV. P. 106(b). In this circumstance, the court may authorize service by leaving a copy of the citation and petition with anyone over the age of sixteen at the location for service specified in the affidavit or service "in any other manner that the affidavit or other evidence before the court shows will be reasonably effective to give the defendant notice of the suit." *Id.*

Two of Maria's witnesses, including Maria herself, would have testified that she still lived at the Houston address at the time Hector sought service upon her for the second Mexican proceeding. Her additional witnesses would have testified that they lived at the Houston address and, if Maria was not available to accept service, they would have accepted service on her behalf and immediately given the documents to her. Thus, the contents of Maria's bill of exceptions indicates that, had personal service or service by mail on Maria at the Houston address been unsuccessful, alternate service pursuant to Rule 106(b) would have been effective to give Maria notice of the Mexican child custody proceeding. This proffered evidence is relevant to Maria's asserted affirmative defense that she did not obtain notice of the proceeding "given in accordance with the standards of [Family Code] Section 152.108," which allows for notice to be made by publication but only if "other means are not effective." *See* TEX. FAM. CODE ANN. §§ 152.305(d)(3), 152.108(a).

Counsel for Hector pointed out that "we would have called Mr. Hector Cuevas Vargas as well that would have contradicted just about every one of [Maria's] witnesses." Thus, there were contested issues of fact the trial court had to determine before it could confirm the registered order.

■ On appeal, Hector argues that Maria's request for an evidentiary hearing, made after the confirmation and enforcement hearing had already started, was untimely, and, therefore, she waived her argument that she was entitled to such a hearing. After Hector filed his request for registration of the Mexican orders, Maria timely requested a hearing to contest the validity of these orders. Although this request did not specifically state that Maria sought an "evidentiary hearing," she

did specify two affirmative defenses to confirmation and enforcement: (1) the issuing court lacked jurisdiction, and (2) Maria "was not given notice and an opportunity to be heard in the child custody proceeding that resulted in the order [to be registered.]" At the hearing, Hector argued that Maria was not entitled to present evidence because no evidence was necessary on the issues of Maria's affirmative defenses, and the trial court could confirm and enforce the Mexican orders as a matter of law. He did not argue that Maria was not entitled to an evidentiary hearing because she did not timely request such a hearing. Furthermore, Hector cites no authority addressing (1) whether a party seeking to present evidence on an affirmative defense to confirmation and enforcement of a foreign order must specifically request an "evidentiary hearing," as opposed to just a "hearing," and (2) at what point such a request must be made to be considered timely. *See* TEX.R.APP. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record.").

We hold that by refusing to allow an evidentiary hearing before issuing its orders confirming the Mexican court's decrees, ordering their enforcement, and issuing a writ of attachment requiring that G.S. be taken and delivered into the possession of Hector's attorneys, the trial court abused its discretion. *See Jack B. Anglin Co.*, 842 S.W.2d at 269 (requiring evidentiary hearing when "material facts necessary to determine the issue are controverted"). Thus, the trial court's order of confirmation and its following order of enforcement and writ of attachment are void. *See Hennessy*, 682 S.W.2d at 345.

We sustain Maria's first, second, and sixth issues. Having sustained these is-

sues, we do not reach Maria's third, fourth, and fifth issues.[2]

## Hector's Special Appearance and the Dismissal of Maria's Supplemental Petition

In her seventh issue, Maria argues that the trial court erred in granting Hector's special appearance and in dismissing with prejudice her supplemental petition, which essentially sought to modify the Mexican custody determinations by naming Maria as sole managing conservator over G.S. and restricting Hector's access to G.S. Hector contends (1) that the trial court properly granted his special appearance because he lacks sufficient contacts with Texas to support personal jurisdiction over him and (2) that the trial court lacks subject-matter jurisdiction to modify the Mexican court's custody determinations because the Mexican court has not determined that it no longer has exclusive continuing jurisdiction or that Texas would be a more convenient forum and because Hector presently resides in Mexico. We agree with Hector that the trial court lacked subject-matter jurisdiction over Maria's supplemental petition.

### A. Standard of Review

■ Whether a trial court has subject-matter jurisdiction is a question of law that we review de novo. *See Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex.1998). The party initiating suit bears the burden to allege sufficient facts to establish subject-matter jurisdiction. *See In re Forlenza*, 140 S.W.3d 373, 376 (Tex. 2004) (orig. proceeding). We liberally construe the pleadings in favor of the party invoking the trial court's jurisdiction. *In re S.J.A.*, 272 S.W.3d 678, 682 (Tex.App.-Dallas 2008, no pet.). When an action is grounded in a statute, subject-matter jurisdiction must be shown under the applicable statute. *See Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71, 75 (Tex.2000). "Subject matter jurisdiction is never presumed, cannot be waived, and may be raised for the first time on appeal." *In re S.J.A.*, 272 S.W.3d at 682 (citing *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443–44 (Tex.1993)).

### B. Jurisdiction to Modify Child Custody Determination

■ The Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA") governs jurisdiction over child custody issues in Texas. *See* TEX. FAM.CODE ANN. §§ 152.001–.317 (Vernon 2008 & Supp. 2011); *In re S.J.A.*, 272 S.W.3d at 682. Generally, the court that makes the initial child custody determination retains exclusive continuing jurisdiction over ongoing custody disputes. *In re S.J.A.*, 272 S.W.3d at 682; *Saavedra v. Schmidt*, 96 S.W.3d 533, 541 (Tex.App.-Austin 2002, no pet.). The UCCJEA defines a "child custody determination" as a "judgment, decree, or other order of a court providing for legal custody, physical custody, or visitation with respect to a child," and it defines the "initial determination" as the "first child custody determination concerning a particular child." TEX. FAM.CODE ANN. § 152.102(3), (8) (Vernon 2008). Here, it is undisputed that the Mexican divorce decree was the first determination that provided for the custody of and visitation with G.S.; therefore, it was a child custody determination. *See In re S.J.A.*, 272 S.W.3d at 682. The Mexican court thus retains exclusive continuing jurisdiction,

---

**2.** In her third, fourth, and fifth issues, Maria argues that Hector offered no evidence to meet his initial burden of proof that the Mexican decrees were authentic and had not been altered and that the evidence is legally insufficient to support the trial court's confirmation and enforcement orders.

and it is the only court that can determine if it will continue to exercise that jurisdiction. *See Saavedra*, 96 S.W.3d at 541; *see also In re Bellamy*, 67 S.W.3d 482, 485 (Tex.App.-Texarkana 2002, no pet.) ("Under section 152.202, if one of the parents still resides in Texas and if Texas courts granted the original decree, then a Texas court must determine if Texas still retains exclusive, continuing jurisdiction over the case."), *disapproved of on other grounds, In re Forlenza*, 140 S.W.3d 373 (Tex.2004).

Unless it has temporary emergency jurisdiction, which is not asserted and is inapplicable here, a Texas court does not have subject-matter jurisdiction to modify a child custody determination made by a court of another state[3] unless the Texas court has jurisdiction to make an initial determination under Family Code section 152.201(a)(1) or (2) and

    (1) the court of the other state determines it no longer has exclusive continuing jurisdiction under Section 152.202 or that a court of this state would be a more convenient forum under Section 152.207; or

    (2) a court of this state or a court of the other state determines that the child, the child's parents, and any person acting as a parent do not presently reside in the other state.

TEX. FAM.CODE ANN. § 152.203 (Vernon 2008); *In re S.J.A.*, 272 S.W.3d at 682; *In re D.A.P.*, 267 S.W.3d 485, 487–88 (Tex. App.-Houston [14th Dist.] 2008, no pet.). Texas courts have jurisdiction to make an initial child custody determination if "this state is the home state of the child on the date of the commencement of the proceeding...." TEX. FAM.CODE ANN. § 152.201(a)(1) (Vernon 2008). The UCCJEA defines "home state" as "the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding." *Id.* § 152.102(7) (Vernon 2008).

Here, it is undisputed that Maria and G.S. have lived in Texas since 2004; thus, Texas qualifies as G.S.'s "home state" and Texas has jurisdiction to make an initial child custody determination. However, to satisfy the requirements of section 152.203, the Mexican court must determine either that it no longer has exclusive continuing jurisdiction or that Texas would be a more convenient forum, or a Texas or Mexican court must determine that G.S., Maria, Hector, and any person acting as G.S.'s parent do not presently reside in Mexico. *See id.* § 152.203.

Maria admitted in her supplemental petition that Hector still resides in Mexico. Maria also has presented no evidence that the Mexican court ever determined that it no longer had exclusive continuing jurisdiction or that Texas would be a more convenient forum. As the party initiating suit, Maria bears the burden to allege sufficient facts demonstrating that Texas courts have subject-matter jurisdiction to modify the Mexican custody determinations. *See In re Forlenza*, 140 S.W.3d at 376; *In re S.J.A.*, 272 S.W.3d at 682. Because Maria has not established (1) that the Mexican court determined that it no longer had exclusive continuing jurisdiction, (2) that the Mexican court determined that Texas would be a more convenient forum, or (3) that Hector no longer resides in Mexico, we conclude that section 152.203 of the Family Code has not been satisfied. Because satisfaction of section 152.203 is a condition precedent to the attachment of

3. "A court of this state shall treat a foreign country as if it were a state of the United States for the purpose of applying this subchapter and Subchapter C [relating to jurisdiction]." TEX. FAM.CODE ANN. § 152.105(a) (Vernon Supp. 2011).

jurisdiction of the Texas courts, we hold that the trial court lacks subject-matter jurisdiction over Maria's supplemental petition, which seeks to modify the Mexican custody determinations by naming Maria as G.S.'s sole managing conservator. *See Saavedra*, 96 S.W.3d at 541 ("Absent the California court's relinquishment of that exclusive continuing jurisdiction, the Texas court was without jurisdiction to modify the California orders.").

### C. Modification of Trial Court's Order Dismissing Supplemental Petition with Prejudice

Maria also contends, in her seventh issue, that even if the trial court correctly dismissed her supplemental petition, the court erroneously dismissed the petition "with prejudice" and we should therefore modify the trial court's judgment to remove this language. We agree.

"Dismissal with prejudice constitutes an adjudication on the merits and operates as if the case had been fully tried and decided." *Hickman v. Adams*, 35 S.W.3d 120, 124 (Tex.App.-Houston [14th Dist.] 2000, no pet.) (citing *Ritchey v. Vasquez*, 986 S.W.2d 611, 612 (Tex.1999) (per curiam)); *see also In re. C.S.*, 264 S.W.3d 864, 875 (Tex.App.-Waco 2008, no pet.) (holding same in case involving modification of exclusive right to determine primary residence of child). Thus, an order dismissing a case with prejudice has full res judicata and collateral estoppel effect and bars the subsequent relitigation of the same causes of action or issues between the same parties. *See Hickman*, 35 S.W.3d at 124 (citing *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 630–31 (Tex.1992)); *see also Garrett v. Williams*, 250 S.W.3d 154, 160 (Tex.App.-Fort Worth 2008, no pet.) ("But dismissing a claim based on lack of subject matter jurisdiction does not operate as res judicata."). "In general, a dismissal with prejudice is improper when the plaintiff is capable of remedying the jurisdictional defect." *Harris Cnty. v. Sykes*, 136 S.W.3d 635, 639 (Tex.2004); *Hickman*, 35 S.W.3d at 124 ("If the error could be remedied, then a dismissal with prejudice is improper.").

Here, there was no adjudication on the merits of Maria's supplemental petition. Moreover, the error defeating subject-matter jurisdiction could potentially be remedied. For example, Maria could ask the Mexican court to make a determination either that it no longer has exclusive continuing jurisdiction or that Texas would be a more convenient forum to litigate further child custody issues. Assuming that Texas remains G.S.'s home state, a Texas court would then have subject-matter jurisdiction to entertain a modification of the Mexican court's child custody determinations. *See* TEX. FAM.CODE ANN. § 152.203.

We therefore conclude that because the merits were not adjudicated and the jurisdictional defect in this case could be remedied, the trial court erred in dismissing Maria's supplemental petition with prejudice. We therefore modify the trial court's order dismissing the supplemental petition to delete the words "with prejudice." *See Hickman*, 35 S.W.3d at 125 (modifying trial court's judgment to delete erroneous "with prejudice" language).

We sustain this portion of Maria's seventh issue.

### Conclusion

We modify the trial court's order dismissing Maria's supplemental petition to delete the phrase "with prejudice," and we affirm the order as modified. We reverse the order of the trial court confirming and enforcing the Mexican court's decrees and declare that the trial court's order of confirmation and its following order of en-

forcement and writ of attachment are void. We remand the case to the trial court with instructions to hold the evidentiary hearing required under the circumstances of this case by section 152.305 of the Texas Family Code. All pending motions are denied as moot.