**Opinion issued June 28, 2012**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-11-00193-CV

————————————

## IN RE EDITH GARCIA-MACKLIN ISQUIERDO, Relator

On Appeal from the 246th District Court
Harris County, Texas
Trial Court Case No. 2004-19162

## O P I N I O N

By petition for writ of mandamus, relator, Edith Garcia-Macklin Isquierdo,

challenges the trial court's order denying her plea to the jurisdiction and motion to

dismiss the underlying suit[1] filed by real party in interest, Robert James Macklin,

---

[1]     The underlying case is *In re S.N.M.*, 2004-19162,  in the 246th District Court of
        Harris County, Texas, the Honorable Jim York presiding.

II, seeking modification of the parent-child relationship with Macklin and Isquierdo's minor children. In two issues, Isquierdo contends that the trial court erred in denying her plea to the jurisdiction and, alternatively, her motion to dismiss the underlying lawsuit in favor of a forum in Arizona, where she and the children reside.

We conditionally grant the petition for writ of mandamus.

## Background

In 2004, Isquierdo, in the 246th District Court of Harris County, filed a petition seeking a divorce from Macklin. In August 2005, the trial court signed the final divorce decree, granting Isquierdo and Macklin a divorce, naming Isquierdo sole managing conservator of their two children, naming Macklin possessory conservator of their two children, and granting Macklin certain visitation rights.

On January 31, 2011, Macklin, in the underlying court, filed a petition to modify the parent-child relationship, seeking further orders regarding his visitation rights. Isquierdo filed a special appearance, plea to the jurisdiction, and motion to "decline jurisdiction" in favor of an Arizona forum. Isquierdo asserted that she and the children reside in Arizona, she is not subject to personal jurisdiction in Texas, the trial court did not have continuing subject-matter jurisdiction to make a child custody determination, and the trial court should decline to exercise

2

jurisdiction because Arizona is a more convenient and "appropriate forum for this custody/visitation determination."[2]

Isquierdo attached to her pleading her affidavit, in which she testified that she and her children lived in California from October 2005 to June 2007 and in Arizona from July 2007 to present. Isquierdo further testified that her children had been living with her "constantly" in Arizona since 2007; neither she nor her children had resided in Texas for six years; there had been "no significant connection with the State of Texas" since 2005; neither she nor her children had been present in Texas "since 2005 except for the few visitations requested" by Macklin; her children had "no contact" with Texas "since the summer of 2008"; the children had "only visited [Macklin] on a few occasions when requested by him"; Macklin had not requested to visit his children "during the years 2009, 2010, and 2011"; "all evidence concerning what is in the best interest of the children" in regard to visitation is located in Arizona; and there is no evidence in Texas "concerning [the] children's care, protection, training and personal relationships."

After a hearing at which counsel for both parties presented arguments, but in which neither party testified,[3] the trial court orally denied Isquierdo's special

---

[2]     Isquierdo also argued that the trial court should decline to exercise jurisdiction because Macklin had engaged in "unjustifiable conduct," i.e., by harassing and threatening her. Isquierdo noted that, in 2009, she had obtained in an Arizona court a protective order against Macklin.

appearance.  The trial court subsequently entered "findings of fact and conclusions of law regarding the assertion of jurisdiction," stating that it had denied Isquierdo's special appearance, plea to the jurisdiction, and motion to decline jurisdiction because Macklin "continues to reside within the State of Texas" and the trial court is the court of "continuing exclusive jurisdiction."[4]

## Standard of Review

A writ of mandamus is an appropriate means to require a trial court to comply with the jurisdictional requirements of the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA").   TEX. FAM. CODE ANN. §§ 152.001–.317 (Vernon 2008 & Supp. 2011); *see Powell v. Stover*, 165 S.W.3d 322, 325 (Tex. 2005) (citing *In re Forlenza*, 140 S.W.3d 373, 375 (Tex. 2004)). Statutory construction is a question of law that we review de novo.  *In re Forlenza*, 140 S.W.3d at 376 (citing *McIntyre v. Ramirez*, 109 S.W.3d 741, 745 (Tex. 2003)).

## Jurisdiction

In her first issue, Isquierdo argues that the trial court erred in denying her plea to the jurisdiction because it lacked subject-matter jurisdiction over Macklin's "child custody lawsuit."

---

[3]   Isquierdo's counsel cited Isquierdo's affidavit during the hearing.

[4]   We granted Isquierdo's emergency motion to stay the trial court proceedings pending resolution of her petition for writ of mandamus.

The UCCJEA governs jurisdiction over child custody issues in Texas. *See* TEX. FAM. CODE ANN. §§ 152.001–.317; *Razo v. Vargas*, 355 S.W.3d 866, 875 (Tex. App.—Houston [1st Dist.] 2011, no pet.). "Article 2 of the UCCJEA specifically grants exclusive continuing jurisdiction over child custody disputes to the state that made the initial custody determination and provides specific rules on how long this jurisdiction continues."[5] *Forlenza*, 140 S.W.3d at 375; *see* TEX. FAM. CODE ANN. §§ 152.201, 152.202 (Vernon 2002); *see also Razo*, 355 S.W.3d at 875 (providing that, under UCCJEA, generally, court that makes initial child custody determination retains exclusive continuing jurisdiction over ongoing custody disputes). The UCCJEA defines a "child custody determination" as a "judgment, decree, or other order of a court providing for legal custody, physical custody, or *visitation* with respect to a child," and it defines the "initial determination" as the "first child custody determination concerning a particular child." TEX. FAM. CODE ANN. § 152.102(3), (8) (Vernon 2008) (emphasis added).

Section 152.202(a) governs the duration of the decree-granting state's exclusive continuing jurisdiction, and it provides that a court of this state that has made an initial child custody determination consistent with section 152.201 has exclusive continuing jurisdiction over the determination until

---

[5] "Rules that prevent another state from modifying a child custody determination while exclusive continuing jurisdiction remains in the original-decree state complement these provisions." *In re Forlenza*, 140 S.W.3d 373, 375 (Tex. 2004).

5

(1)     a court of this state determines that neither the child, nor the child and one parent, nor the child and a person acting as a parent, have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training, and personal relationships; or

(2)     a court of this state or a court of another state determines that the child, the child's parents, and any person acting as a parent do not presently reside in this state.

TEX. FAM. CODE ANN. § 152.202(a) (emphasis added); *see also Forlenza*, 140 S.W.3d at 379 (stating that "exclusive jurisdiction continues in the decree-granting state as long as a significant connection exists or substantial evidence is present").

Neither party contests that the trial court had jurisdiction over the initial custody determination, which the trial court made in the final divorce decree. Section 152.202(a)(2) does not apply because Macklin continues to reside in Texas. TEX. FAM. CODE ANN. § 152.202(a)(2). Therefore, we must determine whether the trial court properly applied section 152.202(a)(1) in deciding that it had exclusive continuing jurisdiction over Macklin's petition seeking a modification of the parent-child relationship. *See Forlenza*, 140 S.W.3d at 376.

In *Forlenza*, the Texas Supreme Court considered whether there was "a significant connection with Texas sufficient to support the trial court's exclusive continuing jurisdiction" over the modification proceedings before it. 140 S.W.3d at 377. There, following their parents' divorce, the children lived with their father in four different states over a five and one-half year period while the mother

6

remained in Texas. *Id*. at 374. When the father was offered a job in Taiwan, the mother filed suit in the same Texas district court that had granted the parents' divorce, seeking to modify the prior agreed possession order and requesting a restraining order prohibiting the father from relocating the children outside of the United States. *Id*. The father filed a motion to dismiss, alleging that the Texas district court did not have exclusive continuing jurisdiction under section 152.202(a) to modify its previous child custody order. *Id*. The trial court, after conducting an evidentiary hearing, denied the father's motion, but the court of appeals granted the mother's petition for writ of mandamus, concluding that the trial court had abused its discretion and the case should be dismissed. *Id*. The mother then filed a petition for writ of mandamus with the supreme court. *Id*.

The supreme court noted that the children had visited Texas six times in the relevant period, the children had lived with the mother "for considerable periods [] each lasting approximately one month during the summer" on four of these occasions, the mother testified that "more visitation would have occurred in Texas but for [the father's] actions and the fact that the children were not allowed to fly to Texas," the mother had "repeatedly" flown to Washington, Ohio, and Virginia to see the children while they lived with their father in various locations, the father admitted that the mother had made "at least fifteen such trips in the four-year period under review," and numerous relatives of the father and mother lived in

7

Texas and maintained a relationship with the children *Id*. at 376–78. The court noted that the evidence "clearly indicate[d]" that the mother had "maintained a significant relationship with her children" and "establishe[d] that the children visited Texas on a number of occasions and maintained a close relationship with their mother and other relatives residing in Texas," all of which, the court noted, were "important considerations under the UCCJEA." *Id*. The supreme court, noting that the "children had a significant connection with Texas based on their visits" to Texas and "their personal relationships maintained in" Texas, concluded that the trial court had exclusive continuing jurisdiction over the modification proceeding. *Id*. at 378–79.

Here, there is no evidence in the record before us like that presented in *Forlenza* that supports a finding that a Texas court retains continuing exclusive jurisdiction. Rather, the only evidence presented to the trial court in this case was in Isquierdo's affidavit. Her uncontroverted testimony establishes that she has lived with her children out of Texas since her divorce from Macklin in 2005, and she and the children have resided in Arizona since 2007. In fact, Isquierdo and her children have been living in Arizona "constantly" since 2007, and neither she nor her children have been present in Texas "since 2005 except for the few visitations requested" by Macklin. Moreover, the children have had no contact with Texas "since the summer of 2008," and Macklin did not make any requests to visit the

8

children "during the years 2009, 2010, and 2011." Thus, there is no evidence of any visitation within Texas during the last two and one-half years to support a finding of a "significant connection." And, the only evidence presented to the trial court is that Macklin had not made any requests to visit his children during the two-year period preceding his petition. There is simply no evidence upon which the trial court could have found that, through a "significant relationship" with Macklin, the children maintained a "significant connection" to Texas. *See id.* at 377 (citing UNIF. CHILD CUSTODY JUR. & ENF. ACT § 202 cmt. 1, 2, 9 U.L.A. 674) ("If the relationship between the child and the person remaining in the State with exclusive, continuing jurisdiction becomes so attenuated that the court could no longer find significant connections and substantial evidence, jurisdiction would no longer exist . . . . The significant connection to the original decree State must relate to the child, the child and a parent, or the child and a person acting as a parent.")).[6]

We conclude that Isquierdo's testimony, which was uncontroverted, establishes that neither she nor her children have had any "significant connection" with Texas since at least the summer of 2008 and "substantial evidence is no

---

[6] We are mindful that the supreme court has cautioned that a "high level of physical presence in Texas" is not necessary to satisfy the "significant-connection standard" and that the "UCCJEA does not premise the exclusive continuing jurisdiction determination on which state has the *most* significant connection with the child." *In re Forlenza*, 140 S.W.3d at 378.

longer available in this state concerning the [children's] care, protection, training, and personal relationships." *See* TEX. FAM. CODE ANN. § 152.202(a); *see also Mills v. Canoy*, No. 03-04-00681-CV, 2005 WL 2043955, at *1–4 (Tex. App.—Austin Aug. 25, 2005, no pet.) (mem. op.) (affirming trial court's order sustaining mother's plea to jurisdiction in father's suit to modify based upon evidence that mother and child had resided in North Carolina since moving there before divorce, child had not returned to Texas except for single court appearance, child attended school and received medical and mental health care in North Carolina, and child had limited contact and visitation from his father over significant period of time); *Zippo v. Zippo*, 837 N.Y.S.2d 771, 771–72 (N.Y. App. Div. 3rd Dep't 2007) (holding that New York court lacked jurisdiction to modify custody order because child lived with mother in California for prior six years and had only returned to New York to visit incarcerated father for three-day visit each year); *King v. King*, 790 N.Y.S.2d 339, 340–41 (N.Y. App. Div. 4th Dep't 2005) (noting that children had not visited New York in seven years and concluding that, although father lived in New York, New York court lacked jurisdiction over father's petition for visitation and custody because relationship between father and children had become "so attenuated that a court could no longer find significant connections and substantial evidence" in New York).

The trial court, in its oral ruling and findings of fact, emphasized that Macklin still resides in Texas.[7] However, the mere fact that Macklin continues to reside in Texas does not support the trial court's exercise of exclusive continuing jurisdiction over the modification proceeding brought by Macklin. *See Forlenza*, 140 S.W.3d at 376 (acknowledging that commentary to section 152.202 "specifically notes that the presence of one parent remaining in the state is not determinative").

Finally, we address Macklin's two primary arguments. First, Macklin's argument that the trial court properly exercised jurisdiction because the dispute relates to "visitation" rather than "custody" is disposed of by the definition of "child custody determination" in the Family Code. *See* TEX. FAM. CODE ANN. § 152.102(3) (Vernon 2008) (defining "child custody determination" to include court order providing for visitation). Second, Macklin's argument that the trial court retained exclusive continuing jurisdiction of the child custody determination

---

[7] At least one Texas court of appeals appears to have similarly interpreted section 152.202(a) as providing for continuing exclusive jurisdiction merely by the fact that one parent continues to reside in Texas. *See In re K.B.A.*, 145 S.W.3d 685, 689 (Tex. App.—Fort Worth 2004, no pet.) ("[W]e hold that because the pleadings allege that one parent still resides in the State of Texas and because the trial court had previously entered an initial child custody determination regarding the children, the trial court retained exclusive continuing jurisdiction. Because one litigant, the mother, still resides in Texas, the Texas trial court that made the original child custody determination is the only court that has jurisdiction."). As noted above, the supreme court in *Forlenza* acknowledged that the fact that one parent continues to reside in Texas is not "determinative." *In re Forlenza*, 140 S.W.3d at 376.

11

because the trial court entered a child support modification order in July 2010 conflates the issue of child support with the statutory considerations mandated by section 152.202 in determining exclusive continuing jurisdiction regarding child custody determinations. *See King*, 790 N.Y.S.2d at 340–41 (recognizing distinction between jurisdiction over issues of child support and jurisdiction over issues of custody). As acknowledged by Isquierdo, in July 2010, the trial court entered an Order in Suit for Modification of Support Order and to Confirm Support Arrearage as a result of outstanding child support obligations owed by Macklin. In its order, the trial court recited that the Office of the Attorney General participated in these child support proceedings, and the trial court found that, as of June 2010, Macklin was in "arrears in the amount of $14,171.58" in unpaid child support. There is no other evidence in the record before us from this child support action indicating that, as a result of that action, the children retained a significant connection to Texas or that substantial evidence relevant to the child custody determination remains in Texas. Although evidence pertaining to child support obligations might in some cases be relevant to custody determinations, we conclude that the mere fact that Macklin has failed to pay and stay current on his child support obligations does not provide any evidence that his children possess a "significant connection" to Texas or he and his children possess a "significant relationship" that justifies the trial court retaining continuing exclusive jurisdiction

over child custody determinations that are implicated by his petition to modify. The July 2010 order, resulting from a proceeding that appears to have been initiated by the Texas Attorney General to collect Macklin's delinquent child support payments, does not in any way controvert Isquierdo's testimony demonstrating that neither she nor her children have had any "significant connection" with Texas since the summer of 2008 and "substantial evidence is no longer available" in Texas concerning the children's care, protection, training, and personal relationships. *See* TEX. FAM. CODE ANN. § 152.202(a).

In sum, we conclude that the record before us establishes that neither Isquierdo and Macklin's children nor Isquierdo has a significant connection with Texas and substantial evidence is no longer available in Texas concerning the children's care, protection, training, and personal relationships. Accordingly, we hold that the trial court abused its discretion in denying Isquierdo's plea to the jurisdiction filed on the basis of section 152.202.

We sustain Isquierdo's first issue.[8]

---

[8]     Having held that the trial court erred in denying Isquierdo's plea to the jurisdiction filed on the basis of section 152.202, we do not address Isquierdo's second issue, in which she complains that the trial court erred in denying her motion to decline jurisdiction in favor of a more appropriate forum. *See* TEX. FAM. CODE ANN. § 152.207 (Vernon 2008). Additionally, because we have granted Isquierdo mandamus relief, her petition for writ of prohibition, which she filed contemporaneously with her petition for writ of mandamus, is rendered moot.

13

## Conclusion

We conditionally grant the petition for writ of mandamus and direct the trial court to vacate its order and to enter an order finding that "neither the children, nor the children and one parent, nor the children and a person acting as a parent, have a significant connection with this state and substantial evidence is no longer available in this state concerning the child's care, protection, training, and personal relationships." The writ will issue only if the trial court fails to comply.[9]


Terry Jennings
Justice

Panel consists of Chief Justice Radack and Justices Jennings and Keyes.

---

[9]  We lift the stay previously imposed.