**Opinion issued October 11, 2012.**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-12-00572-CV

————————————

## IN RE ATSUKO KOTAKE HICKMAN, Relator

On Appeal from the 311th District Court
Harris County, Texas
Trial Court Case No. 2010-76699

## MEMORANDUM OPINION

By petition for writ of mandamus, Atsuko Kotake Hickman challenges the

trial court's assumption of subject-matter jurisdiction in this international child-

custody dispute. The sole issue presented by Atsuko requires us to decide whether

Texas is the "home state" of one of her minor children for purposes of the Uniform

Child Custody Jurisdiction and Enforcement Act (UCCJEA), and thus whether the

trial court properly assumed jurisdiction. We hold that, because the child lived with Atsuko in Japan for more than six consecutive months before the commencement of the underlying child-custody proceeding,[1] Texas is not the child's home state and the trial court erred by assuming jurisdiction. Accordingly, we conditionally grant Atsuko's petition for writ of mandamus.

## Background

Atsuko, a citizen of Japan, and Randall Hickman, a citizen of the United States, met as graduate students in Virginia. After dating for some time, Atsuko and Randall married, had their first child, H.J.H., and later moved to Houston, Texas. Shortly after the move, Atsuko became pregnant with the couple's second child, and was advised by her doctor to take extra rest and care during the pregnancy. Because they had no family in Texas to assist Atsuko, Randall and Atsuko decided that Atsuko would return with H.J.H. to her family in Japan, give birth to their second child there, and then return to Texas where Randall would remain. Randall drove Atsuko and H.J.H. to the airport in July 2007.

According to Atsuko, her plan to return to Texas changed when her second child, S.F.H., was diagnosed with myelodysplastic syndrome and cretinism shortly after her birth. Because S.F.H.'s condition required continuing medical attention,

---

[1] The underlying case is *In the Matter of the Marriage of Randall J. Hickman and Atsuko Kotake Hickman and in the Interest of H.J.H. and S.F.H., Children*, No. 2010-76699 in the 311th District Court of Harris County, Texas, the Honorable Denise Pratt presiding.

Atsuko remained in Japan with both children.[2] Randall traveled back and forth between Texas and Japan to see the children until he filed for divorce and asked for joint conservatorship of H.J.H. in Texas in November 2010. From the time Randall dropped them off at the airport in July 2007 until the time Randall initiated the underlying child-custody proceeding in November 2010, Atsuko and H.J.H. lived in Japan. Neither Atsuko nor H.J.H. was physically present in, or made any trips to, the United States.

Atsuko filed a plea to the jurisdiction in the Texas action, complaining in pertinent part that the trial court lacked subject-matter jurisdiction under the UCCJEA because Texas was not the children's home state or, alternatively, that Texas was an inconvenient forum for the divorce and child-custody proceedings. In his response, Randall conceded that the trial court was without subject-matter jurisdiction to make an initial child-custody determination regarding S.F.H. (who had never lived in Texas), but he urged the trial court to refuse to enforce the UCCJEA home-state-jurisdiction requirement with respect to H.J.H., alleging that the child-custody law of Japan violates fundamental human rights. According to Randall, Japanese law does not contemplate joint custody arrangements or rarely affords fathers and non-Japanese citizens equal treatment under the law, and he

---

[2] Randall disputes that any restrictions resulting from S.F.H.'s medical condition have precluded Atsuko from returning to the United States with the children.

would have no means of securing his fundamental right to parent H.J.H. in a Japanese child-custody proceeding.

An associate judge conducted the initial hearings on the jurisdictional issue and issued an order assuming subject-matter jurisdiction over H.J.H. After a de novo hearing of the jurisdictional issue, the district judge affirmed "the ruling of the associate judge and [found] that it ha[d] jurisdiction to make an initial child custody determination as to the child, H.J.H." The court, however, ordered an abatement of the Texas action so that Randall could seek relief from a Japanese court. Nothing in the record suggests that Randall filed a Japanese child-custody proceeding during the abatement period. The abatement was lifted, and not long thereafter Atsuko filed this mandamus proceeding challenging the trial court's assumption of subject-matter jurisdiction with respect to H.J.H.

### Subject-Matter Jurisdiction in Child-Custody Proceedings

Subject-matter jurisdiction exists "when the nature of the case falls within a general category of cases the court is empowered, under applicable statutory and constitutional provisions, to adjudicate." *Bullock v. Briggs*, 623 S.W.2d 508, 511 (Tex. App.—Austin 1981, writ ref'd n.r.e.); *see Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 553−54 (Tex. 2000) (stating that "subject-matter jurisdiction is essential to a court's power to decide a case"). In Texas, subject-matter jurisdiction over child-custody determinations is governed by the UCCJEA, codified at

4

sections 152.001−.317 of the Family Code. *See* TEX. FAMILY CODE ANN. §§ 152.001−.317 (West 2008 & Supp. 2011); *see also Razo v. Vargas*, 355 S.W.3d 866, 875 (Tex. App.—Houston [1st Dist.] 2011, no pet.). A writ of mandamus is an appropriate means to require a trial court to comply with the UCCJEA's jurisdictional requirements. *See In re Forlenza*, 140 S.W.3d 373, 379 (Tex. 2004); *Geary v. Peavy*, 878 S.W.2d 602, 604 (Tex. 1994) (stating that mandamus is appropriate remedy for jurisdictional dispute under former Uniform Child Custody Jurisdiction Act); *In re Powers*, 974 S.W.2d 867, 869 (Tex. App.—Houston [14th Dist.] 1998, orig. proceeding) (same). Because Randall, in this proceeding, does not seek custody of S.F.H., the youngest child, we need only decide whether the trial court abused its discretion by assuming jurisdiction to make an initial child-custody determination with respect to H.J.H., the eldest child. The construction of the UCCJEA's "home state" provision and the existence of subject-matter jurisdiction are questions of law that we review de novo. *See Powell v. Stover*, 165 S.W.3d 322, 324 (Tex. 2005); *McIntyre v. Ramirez*, 109 S.W.3d 741, 745 (Tex. 2003); *Razo*, 355 S.W.3d at 875.

## I. Japan—not Texas—is H.J.H.'s "Home State"

Randall has the burden to plead facts establishing the Texas trial court's jurisdiction under the UCCJEA. *See In re Oates*, 104 S.W.3d 571, 575 (Tex. App.—El Paso 2003, orig. proceeding) (observing that "[t]he petitioner has the

5

burden to allege facts that affirmatively show the trial court has subject matter jurisdiction"). Under the UCCJEA, a child's home state—"the state in which the child lived with a parent . . . for at least six consecutive months immediately before the commencement of a child custody proceeding"—has primary jurisdiction in child-custody proceedings. TEX. FAMILY CODE ANN. § 152.102(7); *see also* TEX. FAMILY CODE ANN. §§ 152.201−.210 (establishing jurisdictional scheme for child-custody proceedings), § 152.102(3) (defining "child custody proceeding" as "proceeding in which legal custody, physical custody, or visitation with respect to a child is an issue"). The determination of a child's home state is made based on the child's physical presence in a state, and should not involve inquiries into the states of mind of the child or the child's parents. *See Powell*, 165 S.W.3d at 326 (declining to apply test to determine where child "lived" based on parties' subjective intent and relying instead on child's physical location as central factor to be considered).

A Texas court has jurisdiction to make an initial child-custody determination only if:

(1)     this state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state;

(2)     a court of another state does not have jurisdiction under Subdivision (1), or a court of the home state of the child has

declined to exercise jurisdiction on the ground that this state is the more appropriate forum under Section 152.207 or 152.208, and:

(A)    the child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; and

(B)    substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships;

(3)    all courts having jurisdiction under Subdivision (1) or (2) have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under section 152.207 or 152.208; or

(4)    no court of any other state would have jurisdiction under the criteria specified in Subdivision (1), (2), or (3).

TEX. FAMILY CODE ANN. § 152.201(a). With respect to the international application of this jurisdictional scheme, a foreign country is treated as a state of the United States. TEX. FAMILY CODE ANN. § 152.105(a).

Randall initiated the Texas child-custody proceeding in November 2010. No party asserts—and nothing in the record suggests—that H.J.H. lived in or was physically present in Texas during the six months preceding that date. Rather, it is undisputed that Atsuko is the parent with whom H.J.H. has lived exclusively in Japan since July 2010, including the six-month period before the commencement of the Texas action. Thus, Japan—not Texas—is H.J.H.'s "home state." *See Powell*, 165 S.W.3d at 326; *Koester v. Montgomery*, 886 S.W.2d 432, 435 (Tex.

App.—Houston [1st Dist.] 1994, no writ). Unless Japan has "declined to exercise jurisdiction on the ground that a [Texas court] is the more appropriate forum," Japan has primary jurisdiction to make the initial custody-determination regarding H.J.H. *See* TEX. FAMILY CODE ANN. § 152.201(a)(2), (3). Because the record does not establish that Japan has done so, section 152.201(a) does not confer the trial court with subject-matter jurisdiction.

## II. Randall did not establish that Japan's child-custody law violates fundamental principles of human rights

Randall argues that the trial court properly refused to comply with the UCCJEA's jurisdictional scheme because Japan's child-custody law is contrary to fundamental principles of human rights. Specifically, Randall asserts that Japanese law awards custody to one parent, without any provision for joint conservatorship, and affords mothers and Japanese citizens preferential treatment; thus, application of Japanese law would deprive Randall of his fundamental right to parent H.J.H. and to equal protection of the law. Randall further asserts that because Atsuko made the unilateral decision not to return to Texas with H.J.H., the trial court's assumption of jurisdiction is "in keeping with one of the primary goals of the UCCJEA—prevention of child abduction." Atsuko responds that Randall's assertions regarding Japanese law are unsupported. We agree.

Randall's argument regarding the trial court's discretion to not enforce the UCCJEA's jurisdictional scheme rests on section 152.105(c) of the Family Code.

8

That section provides that "[a] court of this state need not apply [the UCCJEA] if the child custody law of a foreign country violates fundamental principles of human rights." TEX. FAMILY CODE ANN. § 152.105(c) (West 2008). Section 152.105(c)'s application is a matter on which few Texas courts have written, and Randall has not cited—nor have we found—any case deeming Japan's child-custody law contrary to "fundamental principles of human rights" under section 152.105(c) or its equivalent under another state's adoption of the uniform act. *But see Toland v. Futagi*, 40 A.3d 1051, 1064 (Md. 2012) (concluding that appointment of child's grandmother as child's guardian pursuant to Japanese decree did not implicate fundamental principles of human rights because appointment did not sever father's right to custody of child, and thus exception allowing trial court to exercise jurisdiction over child-custody proceeding when child-custody law of foreign country violates fundamental principles of human rights did not apply). The text of section 152.105(c) likewise provides little guidance; it is silent with respect to what constitutes a violation of "fundamental principles of human rights." *See id.* But we need not decide the standard for fundamental human rights violations as a matter of first impression in this mandamus proceeding because Randall failed to provide the trial court with information sufficient to determine Japan's child-custody law. *See PennWell Corp. v. Ken Assocs., Inc.*, 123 S.W.3d 756, 761 (Tex. App.—Houston [14th Dist.] 2003,

9

pet. denied) (noting that party requesting that court determine foreign law must "furnish the court with sufficient information to enable it to properly comply with the request; otherwise, the failure to provide adequate proof results in a presumption that the law of the foreign jurisdiction is identical to that of Texas").

Here, Randall's request for the trial court to find that Japan's child-custody law was contrary to fundamental human rights necessarily required the trial court to interpret the law of Japan. In support of his request, Randall presented the trial court only with the argument of his counsel and citations in his legal briefing to (1) excerpts of a single provision of the Japanese Civil Code, MINPŌ [MINPŌ] [CIV. C.] art. 766 (Japan), and (2) a law journal article, Jones, Colin P.A., *In the Best Interests of the Court: What American Lawyers Need to Know about Child Custody and Visitation in Japan*, 8 ASIAN-PAC. L. & POL'Y J. 166 (2007). Despite the fact that H.J.H. was not abducted to Japan, Randall also relied on a website address for the U.S. Department of State's 2007 article on "International Parent Child Abduction—Japan," and referenced *From the Shadows*, a documentary film that he asserts "follows several American parents trying to access abducted children in Japan" and an msnbc.com article regarding child abductions in Japan. Although the mandamus record contains multiple copies of the briefing Randall submitted to the trial court, none of the copies includes as an attachment any of the Japanese-law authorities cited or referenced by Randall, and Randall did not

10

present copies of those authorities to the trial court as part of the jurisdictional hearings. Neither did Randall present any witness testimony or affidavits from a Japanese family-law expert. Randall's legal briefing and the argument of his counsel are not evidence of Japan's child-custody law.[3] *See Banda v. Garcia*, 955 S.W.2d 270, 272 (Tex. 1997) (unsworn statements of attorneys are not normally evidence); *Love v. Moreland*, 280 S.W.3d 334, 338 (Tex. App.—Amarillo 2008, no pet.) (same).

Moreover, even assuming that article 766 of the Japanese Civil Code has been accurately translated in the briefing to this Court,[4] that article, entitled "Determinations of Matters Regarding Custody of Child After Divorce," alone does not support a determination that Japan's child-custody law violates any standard of fundamental human rights. Article 766, as translated, provides:

> 1. If parents divorce by agreement, the matter of who will have custody over a child, visitation and other means of contact between the child and his or her mother or father, payment of expenses for child-rearing, and any other necessary matters regarding child custody

---

[3] Atsuko objected that the argument of Randall's counsel was not evidence during the jurisdictional hearings.

[4] We note that Randall did not provide the trial court with a copy of the full text of article 766 in either the Japanese language or as translated in the English language; rather, he provided an excerpt of the article as translated on an American university law school's website. Atsuko, in her briefing to the trial court, supplied the full text as translated by the law school. The translation provided in Atsuko's briefing to the trial court is different than the translation she provided in her appellate briefing. Atsuko asserts that after the trial court made its jurisdictional ruling, article 766 was amended.

shall be determined by that agreement. In such situations, the child's interests must be given the highest priority.

2. If an agreement referred to in the preceding paragraph cannot be reached or discussions are not possible, a family court shall decide the matters referred to therein.

3. If the family court finds it necessary, it may change determinations made pursuant to the provisions of the preceding two paragraphs and order any other proper disposition regarding child custody.

4. The rights and duties of parents beyond the scope of custody may not be altered by the provisions of the preceding three paragraphs.

Much like Texas law, article 766 prioritizes the agreement of parents regarding "custody, visitation and other means of contact" between parent and child and gives the "highest priority" to the child's interests. Failing the parents' agreement, a Japanese family court could decide matters of custody and visitation; however, nothing in the plain language of article 766 immediately severs Randall's right to parent H.J.H. in favor of Atsuko or treats him in a manner subordinate to her. Thus, without further proof of Japanese law, which Randall has not provided, we will not speculate on how a Japanese court will respond to a custody challenge by Randall. Although both the associate judge and the district judge in the Texas action abated the proceeding to allow Randall to pursue relief in a Japanese court, he has not done so. Neither does Randall allege that he has been deprived of access to information about H.J.H.'s whereabouts or denied access to her in Japan.

Accordingly, on this record, the trial court could not reasonably conclude that Japanese child-custody laws violate "fundamental principles of human rights," and therefore the trial court could not reasonably refuse to apply the UCCJEA's jurisdictional scheme conferring Japan with primary jurisdiction to make an initial child-custody determination as to H.J.H., who has resided in Japan for the last five years. As her petition concerns a jurisdictional dispute arising from a child-custody proceeding, Atsuko is entitled to mandamus relief because the trial court erred by assuming subject-matter jurisdiction to make an initial child-custody determination regarding H.J.H. *See In re Oates*, 104 S.W.3d at 575.

**Conclusion**

We conditionally grant Atsuko's petition for writ of mandamus and direct the trial court to vacate its order assuming subject-matter jurisdiction over the initial child-custody determination regarding H.J.H., and instead to enter an order finding that "the court does not have jurisdiction to make an initial child-custody determination as to H.J.H. under section 152.201(a) of the Family Code."[5] We are confident the trial court will comply, and our writ will issue only if the trial court does not.

---

[5] We make no holding with respect to the trial court's jurisdiction to dissolve the parties' marriage and divide their marital estate. *See* TEX. FAMILY CODE ANN. § 6.308 (West 2011) (recognizing that Texas court may have only partial jurisdiction over matters raised in suit for dissolution of marriage because, among other reasons, court's authority may be restricted by UCCJEA).

13

Harvey Brown
Justice

Panel consists of Justices Bland, Massengale, and Brown.