

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-21-00105-CV
_____

## IN THE INTEREST OF A.A., G.A., AND K.A., CHILDREN

On Appeal from the County Court at Law Number 1
Randall County, Texas
Trial Court No. 77,867-L1; Honorable Jack M. Graham, Presiding

October 5, 2021

## OPINION

### Before PIRTLE and PARKER and DOSS, JJ.

Appellant, M.A., is the mother of the three children involved in this appeal.[1] By three issues, she appeals from the trial court's order terminating her parental rights to those children.[2] In the first issue, she argues the trial court did not have jurisdiction under

---

[1] M.A. is what the Texas Department of Family and Protective Services terms a "non-offending parent." The children were in the sole care of their father at the time of removal.

[2] The parental rights of the children's father were also terminated in the underlying proceeding. He is not a party to this appeal.

the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA") and thus, the order terminating her parental rights is void. In the second issue, she contends the evidence was legally and factually insufficient under the applicable standard to support termination of her parental rights under section 161.001(b)(1)(O) of the Family Code. Via the third issue, M.A. contends the evidence was legally and factually insufficient to support a finding under the requisite standard that termination of her parental rights was in the best interests of her children. We will affirm.

### BACKGROUND

By the time of the final hearing, A.A. was nearly twelve years old, G.A. was ten years old, and K.A. was nine years old.[3] The Texas Department of Family and Protective Services became involved with the family when it received a referral on October 22, 2019, alleging neglectful supervision of A.A. by her father. The report included allegations that the three children were left without adult supervision for extended periods of time and that A.A. had received injuries attempting to use equipment that should only be used by an adult.

At that time, the children were removed from their father's care and placed in a foster home, where they remained at the time of the final hearing. During the pendency of the proceeding, a drug test on the father revealed a positive result for methamphetamines and amphetamines, after he first supplied a fake urine specimen. While the case was pending, the father also admitted to the use of marijuana on April 7, 2020. A safety plan was put into place in which the children were to be supervised by the

---

[3] To protect the privacy of the parties involved, we refer to them by their initials. *See* TEX. FAM. CODE ANN. § 109.002(d) (West Supp. 2020). *See also* TEX. R. APP. P. 9.8(b).

father's mother; however, the family did not consistently adhere to the terms of that safety plan, as evinced by the father's unsupervised presence with the children at the home on April 7, 2020—the same day the father was smoking marijuana.

The Department requested that the three children submit to a drug screen on two separate occasions; however, on each occasion the testing could not be conducted due to the presence of lice and lice eggs. The family was told each time to have the children treated for lice.

Two days after the initial referral, the Department unsuccessfully attempted to locate the mother of the children, M.A. When a representative of the Department visited with the father several days after the referral, he said he believed M.A. was incarcerated. In January 2020, the father informed the Department that M.A. was in a rehabilitation facility in Las Cruces, New Mexico. When the Department attempted to verify that fact, the father said she was no longer there. The father did not have any other contact information for her but said he could reach her through social media and provide contact information to the Department. Eventually, M.A. left a message with the Department on February 10, 2020.

The Department made contact with M.A. on February 18, 2020. At that time, she said the children had not been in her custody and care for a long time and that "she lost her mind" when another of her daughters passed away in 2016. She testified she began using methamphetamine in high school, used the drug throughout her twenties, became sober, but then relapsed after her daughter died. She was sober from 2017 to 2020, but

relapsed again around the time the Department opened its case regarding the children at issue in this proceeding.

M.A. testified she allowed the father to have primary custody of the three children as part of their divorce proceedings in 2017. She said she and the father could not get along and that they had a rough marriage that included domestic violence. The father also used controlled substances and he admitted he used marijuana and methamphetamines a few days prior to his meeting with the Department. M.A. admitted she had been in jail for traffic tickets and that she had spent some time in Mesilla Valley in New Mexico for substance abuse treatment. At the time of the final hearing, she was living in New Mexico.

The Department filed an *Original Petition for Protection of a Child, for Conservatorship, and for Termination in Suit Affecting the Parent-Child Relationship* in April 2020. The Department provided M.A. a family service plan that included services she was required to perform to secure the return of her children to her care. That plan was made an order of the trial court.[4] The trial court held a final hearing in the matter in April 2021. At that hearing, a Department caseworker testified "there [had] not been observed progression" by M.A. on the services set forth in her service plan. Specifically, she told the court M.A. "hadn't been compliant with updating the Department on her changes of residence." M.A. maintained contact with the Department when "she want[ed] to or as she [saw] fit." She failed to maintain stable housing and employment.

---

[4] Although an *Order Making Recommended Services Order an Order of the Court* was not filed with respect to M.A. (as it was for the father, L.A.), the family service plan was incorporated in the *Status Hearing Order* signed by the associate judge on June 10, 2020.

Significantly, M.A. was not able to remain drug-free but rather, tested positive on her drug screens or failed to submit to a requested drug screen. The caseworker also testified that M.A. failed to be assessed by a physician or have any evaluations, did not complete her psychological assessment, and did not participate in or complete rational behavioral therapy. M.A. did, however, comply with her prescribed medication and dosages. M.A. did not complete the required parenting classes and had not initiated inpatient drug rehabilitation as required by her service plan.

The caseworker opined that it was in the children's best interests that M.A.'s parental rights be terminated. She stated her conclusion was based on the lack of change in M.A.'s drug use as evidenced by her positive drug screens. She believed return of the children to M.A.'s care would be harmful to the emotional well-being of the children and did not believe M.A. was capable of providing for the physical and emotional well-being of the children now or in the future. In addition, the ad litem for the children opined it was in the children's best interests that M.A.'s parental rights to her children be terminated.

Following the hearing, the court issued a written order finding that the Department established by clear and convincing evidence that M.A. failed to comply with the provisions of a court order that specifically established the actions necessary for her to obtain the return of the children. TEX. FAM. CODE ANN. § 161.001(b)(1)(O) (West 2020). The trial court also found that termination of M.A.'s parental rights was in the children's best interests. TEX. FAM. CODE ANN. § 161.001(b)(2) (West 2020).

ANALYSIS

**ANALYSIS**

**STANDARD OF REVIEW**

A trial court may terminate parental rights after finding by clear and convincing evidence that the parent's acts or omissions satisfy at least one predicate ground for termination and that termination is in the children's best interests. *See* TEX. FAM. CODE ANN. § 161.001(b)(1), (2). "Clear and convincing evidence" is "proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007.

The heightened burden of proof in parental termination cases "gives rise to a concomitantly heightened standard of appellate review." *In re Z.N.*, 602 S.W.3d 541, 545 (Tex. 2020) (per curiam). When the standard is clear and convincing, the distinction between legal and factual sufficiency "lies in the extent to which disputed evidence contrary to a finding may be considered." *In re A.C.*, 560 S.W.3d 624, 630 (Tex. 2018). When performing a legal-sufficiency review, the reviewing court "cannot ignore undisputed evidence contrary to the finding" but "must otherwise assume the factfinder resolved disputed facts in favor of the finding." *Id.* at 630-31. Evidence is legally insufficient if, after conducting this review, the reviewing court concludes that no reasonable fact finder could form a firm belief or conviction that the matter that must be proven is true. *In re Z.N.*, 602 S.W.3d at 545 (citing *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)).

However, a factual-sufficiency review requires weighing disputed evidence contrary to the finding against all the evidence supporting the finding. *In re A.C.*, 560 S.W.3d at 631. The reviewing court must consider whether the "disputed evidence is

6

such that a reasonable factfinder could not have resolved it in favor of the finding." *Id.* Evidence is factually insufficient if "the disputed evidence a reasonable factfinder could not have credited in favor of a finding is so significant that the factfinder could not have formed a firm belief or conviction that the finding was true." *Id.* (citing *In re J.F.C.*, 96 S.W.3d at 266). Under both standards, the reviewing court defers to the trier of fact's determinations on the credibility of the witnesses "so long as those determinations are not themselves unreasonable." *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (citing *Southwestern Bell Tel. Co. v. Garza*, 164 S.W.3d 607, 625 (Tex. 2004)).

### ISSUE ONE—JURISDICTION UNDER UCCJEA

In her first issue, M.A. contends the Texas trial court did not have jurisdiction over this matter under the UCCJEA. Rather, the New Mexico trial court maintained continuing jurisdiction and as a result, the order from which M.A. appeals is void.

As support for her position, M.A. argues she and the father were divorced in the State of New Mexico in September 2017. That resulted in a divorce decree, entitled *Stipulated Final Decree of Dissolution of Marriage, Custody, Visitation, and Support*, that determined the initial custody arrangement of the children under section 152.201, thus vesting the New Mexico court with continuing exclusive jurisdiction. M.A. notes that the Department's *First Amended Motion to Judge to Confer* acknowledges that New Mexico has continuing exclusive jurisdiction and requests the trial court to confer with that court to determine whether the New Mexico court declined jurisdiction. M.A. asserts as additional support for her contention that she lived in New Mexico at the time the Department initiated this case in April 2020 and she participated in counseling in Clovis,

7

New Mexico.  She also completed her psychological evaluation in New Mexico and took parenting classes in New Mexico.

M.A. contends that while the trial court here stated it would confer with the New Mexico court if it deemed it necessary after hearing testimony, there is no evidence included in the record confirming it did so.  Rather, the order of termination simply states, "The Court FINDS that the State of New Mexico has declined to exercise its jurisdiction over the children the subject of this suit after the State of New Mexico determined that Texas is the more convenient forum."  This, M.A. argues, is insufficient under section 151.201 and thus, according to her argument, the order is void.  M.A. compares the circumstances before us to those present in *In re J.P. and A.P.*, 598 S.W.3d 789 (Tex. App.—Fort Worth 2020, pet. denied), in which the court found substantial compliance with the requirements of section 151.201 because the judge in that case entered into the record information regarding contacting the Michigan court, described the telephone call on the record, explained what information the Michigan court required, and read the email correspondence declining jurisdiction into the record.  *Id.* at 798-99.  M.A. argues that none of that occurred here and, accordingly, the Texas court did not have jurisdiction to enter the order terminating her parental rights to her children.

Texas has adopted the UCCJEA.  The UCCJEA governs jurisdiction over child custody issues between Texas and other states.  TEX. FAM. CODE. ANN. §§ 152.001-.317. (West 2014); *In re Isquierdo*, 426 S.W.3d 128, 131 (Tex. App.—Houston [1st Dist.] 2012, orig. proceeding).  Whether a trial court has jurisdiction under the UCCJEA is a matter of subject-matter jurisdiction. *Cortez v. Cortez*, No. 01-19-00296-CV, 2020 Tex. App. LEXIS 10274, at *15 (Tex. App.—Houston [1st Dist.] Dec. 29, 2020, no pet.) (mem. op.) (citing

*In re Salminen*, 492 S.W.3d 31, 38 (Tex. App.—Houston [1st Dist.] 2016, orig. proceeding) ("Subject matter jurisdiction in child custody matters is determined by reference to the UCCJEA, set out in Family Code Chapter 152."); *Waltenburg v. Waltenburg*, 270 S.W.3d 308, 313 (Tex. App.—Dallas 2008, no pet.) (stating that UCCJEA is "exclusive jurisdictional basis for making a child custody determination by a court of this state")). Whether a trial court has subject-matter jurisdiction is a question of law we review *de novo*. *Cortez,* 2020 Tex. App. LEXIS 10274, at *15 (citing *Salminen*, 492 S.W.3d at 38; *In re Burk*, 252 S.W.3d 736, 739 (Tex. App.—Houston [14th Dist.] 2008, (orig. proceeding)). The party seeking to invoke the trial court's jurisdiction has the burden to allege facts that affirmatively demonstrate the court's authority to hear the case. *Cortez*, 2020 Tex. App. LEXIS 10274, at *15 (citing *Seligman-Hargis v. Hargis*, 186 S.W.3d 582, 585 (Tex. App.—Dallas 2006, no pet.)). We construe the pleadings in favor of the party invoking jurisdiction and consider relevant evidence when necessary to resolve the jurisdictional issue. *Cortez*, 2020 Tex. App. LEXIS 10274, at *15 (citation omitted).

Under the UCCJEA, once an initial custody determination is made, the issuing court, here the New Mexico court, retains "exclusive continuing jurisdiction" over all further custody orders and proceedings. TEX. FAM. CODE ANN. § 152.202. The UCCJEA gives the issuing court the sole power to decide whether it will continue to exercise that jurisdiction. *See In re J.P. and A.P.*, 598 S.W.3d at 796-97 (citing *In re Tieri*, 283 S.W.3d 889, 896 (Tex. App.—Tyler 2008, orig. proceeding) (stating that when New Jersey had made initial custody determination, "[o]nly a New Jersey court [could] determine that New Jersey ha[d] lost exclusive, continuing jurisdiction based on" the child's, or the child's and

one parent's, lack of significant connection with the state and based on the fact that substantial evidence was no longer available in New Jersey "concerning the child's care, protection, training, and personal relationships"); *Saavedra v. Schmidt*, 96 S.W.3d 533, 541, 542 (Tex. App.—Austin 2002, no pet.) (noting that the "California court retain[ed] exclusive continuing jurisdiction and [was] the only state that [could] determine if it [would] continue to exercise that jurisdiction" and even if Texas was the more appropriate forum, "the California court must make this determination before a court of this state may modify the California court's child custody determinations")). As the New Mexico court is the only entity that may continue to exercise or decline its own jurisdiction, we look to the New Mexico UCCJEA exclusive jurisdiction provision in making our determination here.

The New Mexico statute addressing exclusive continuing jurisdiction provides as follows:

40-10A-202. Exclusive, continuing jurisdiction.

(a) Except as otherwise provided in Section 204 [40-10A-204 NMSA 1978], a court of this state which has made a child-custody determination consistent with Section 201 or 203 [40-10A-201 or 40-10A-203 NMSA 1978] has exclusive, continuing jurisdiction over the determination until:

(1) a court of this state determines that the child, or the child and one parent, or the child and a person acting as a parent do not have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training and personal relationships; or

(2) a court of this state or a court of another state determines that the child, the child's parents and any person acting as a parent do not presently reside in this state.

10

(b) A court of this state which has made a child-custody determination and does not have exclusive, continuing jurisdiction under this section may modify that determination only if it has jurisdiction to make an initial determination under Section 201 [40-10A-201 NMSA 1978].

N.M. STAT. ANN. § 40-10A-202.

We review a trial court's decision to decline to exercise jurisdiction as an inconvenient forum for abuse of discretion. *Baggs v. Becker*, No. 03-07-00731-CV, 2009 Tex. App. LEXIS 845, at *4-5 (Tex. App.—Austin Feb. 6, 2009, pet. denied) (mem. op.) (citing *Hart v. Kozik*, 242 S.W.3d 102, 106 (Tex. App.—Eastland 2007, no pet.)). A trial court abuses its discretion when its decision is arbitrary, unreasonable, and without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-242 (Tex. 1985). We reverse only when it appears from the record as a whole that the trial court abused its discretion. *Niskar v. Niskar*, 136 S.W.3d 749, 753 (Tex. App.—Dallas 2004, no pet.).

M.A. acknowledges in her appellate brief that it was brought to her attention that the trial court did file an email from the Honorable David Reeb dated April 27, 2021, in which the New Mexico court declined jurisdiction. She maintains that because this was not made part of the clerk's record or a supplemental record, the evidence is insufficient to show the Texas court had jurisdiction over this matter. However, after her brief was filed, a supplemental record was filed that included the email from the judge in New Mexico to the judge in the underlying proceeding. That email provided, "Judge Graham, [a]s per our conversation, New Mexico will decline to exercise jurisdiction over this case since the children have resided in Texas for more than the last 6 months, and Texas is a more convenient forum. Regards, Dave Reeb."

11

Given this information in the record and applying the law to the circumstances before us, we cannot agree with M.A.'s contention and we find the Texas court had jurisdiction over the underlying matter. We overrule M.A.'s first issue.

**ISSUE TWO—PREDICATE GROUNDS—TEXAS FAMILY CODE ANN. § 161.001(b)(1)(O)**

Via M.A.'s second issue, she argues the Department failed to provide sufficient evidence under subsection (O) by which the trial court could have found clear and convincing evidence to terminate her parental rights. She contends that under this subsection, the Department was required to prove not only that she failed to complete her service plan but also that the children were removed from her care due to abuse or neglect. She asserts the Department did not, and cannot, do so.

The underlying court found that the Department had proven that termination was appropriate under subsection (O). *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(O). Only one statutory ground is needed to support termination though the trial court must also find termination is in the child's best interest. *In re K.C.B.*, 280 S.W.3d 888, 894-95 (Tex. App.—Amarillo 2009, pet. denied).

Parental rights may be terminated under section 161.001(b)(1)(O) if the Department establishes the children were removed under chapter 262 because of abuse or neglect; the Department has been the permanent or temporary managing conservator for at least nine months; a court order specifically established the actions necessary for the parent to obtain the return of the children; and the parent failed to comply with that order. *See In re J.F.C.*, 96 S.W.3d at 278-79. M.A. does not challenge that the children

12

have been in the care of the Department for at least nine months. Thus, we will not address that requirement herein.

M.A. points to the fact that she is the "non-offending parent here" and that the children were not removed due to *her* abuse or neglect because the children were living with the father at the time of removal. M.A. and the father were divorced, and the father had primary custody of the children. The Department became involved when it received an allegation that the children were being left alone for long periods of time. The father admitted to drug use and a safety plan was put into place. M.A. was not contacted until five months later. After the children were removed from the father's care, M.A. submitted to a drug screen. It came back positive so the children could not be placed with her. However, the children were not removed from her care due to her positive drug screen. There was no allegation that M.A. abused or neglected the children. She was not in custody of those children when they were removed from the father's care. As such, M.A. argues, the evidence supporting removal under predicate ground (O) was not sufficient.

We do not agree. As the Department points out, under subsection (O), the Department is not required to show that the parent who failed to comply with a court order is the same parent whose abuse or neglect of the children warranted the children's removal. *In re C.F.M.*, No. 07-17-00436-CV, 2018 Tex. App. LEXIS 3058, at *8 (Tex. App.—Amarillo May 1, 2018, no pet.) (mem. op.) (citing *In re D.R.A.*, 374 S.W.3d 528, 532 (Tex. App.—Houston [14th Dist.] 2012, no pet.)). As such, M.A.'s contention that the children were not removed due to *her* abuse or neglect is without merit. *In re C.F.M.*, 2018 Tex. App. LEXIS 3058, at *8. We do, however, find the record supports a finding that the children were removed from their father's care due to *his* abuse or neglect. The

13

record shows the Department received an intake report in October 2019, alleging that the children were being left home alone without supervision for long periods of time. The father admitted to Department personnel that he used marijuana and methamphetamines a few days prior to their meeting. M.A. even admitted she and the father engaged in domestic violence and that she was concerned about the father's drug use. The father continued to use controlled substances during the pendency of the case, even after a safety plan was put into place. That plan required that the father's mother be present with the children, but the father was found alone with the children in violation of that requirement on a date on which he admits he smoked marijuana. As such, the Department concluded there was reason to believe the father engaged in neglectful supervision of the children. M.A. also admitted that in September 2018, before the Department's involvement in the current matter, G.A. told her that her father had hurt her. G.A. told M.A. that the father "lost his temper and held her down on the bed and hit her in the side." We find this evidence supports the trial court's finding that the children were removed from the home due to abuse or neglect.

### TEX. FAM. CODE ANN. § 161.001(d)

Moreover, M.A. contends, a trial court may not order termination under subsection (O) "if a parent proves by a preponderance of evidence that: (1) the parent was unable to comply with specific provisions of the court order; and (2) the parent made a good faith effort to comply with the order and the failure to comply with the order is not attributable to any fault of the parent." TEX. FAM. CODE ANN. § 161.001(d); *In re M.A.S.L.*, No. 04-18-00496-CV, 2018 Tex. App. LEXIS 10509, at *14 (Tex. App.—San Antonio Dec. 19, 2018, no pet.) (mem. op). She argues on appeal that "[i]t appears that a combination of poverty,

14

lack of transportation, and miscommunication all combined to result in M.A.'s failure to comply fully with her service plan." She argues she made a good faith effort to comply with the plan and that any failure to comply was not attributable to any fault on her part.

In 2017, the Texas Legislature amended section 161.001 and added subsection (d) which provides that termination under subsection (b)(1)(O) is disallowed if the parent proves, by a preponderance of the evidence, that the parent was unable to comply with the specific provisions of the court order and made a good faith effort to comply but was unsuccessful through no fault of the parent. TEX. FAM. CODE ANN. § 161.001(d). To support a termination order under subsection (b)(1)(O), there must be a specific court order, or a service plan generated by the Department which has been specifically incorporated into a subsequently signed court order, which makes clear the terms for compliance with sufficient certainty so that the parent knows what duties and obligations have been imposed. *In re S.B.,* No. 07-19-00146-CV, 2019 Tex. App. LEXIS 9695, *23-24 (Tex. App.—Amarillo Nov. 5, 2019, pet. denied).

As a general matter, Texas courts "undertake a strict approach to subsection (O)'s application." *In re C.F.M.*, 2018 Tex. App. LEXIS 3058, at *7-8 (citing *In re M.A.A.*, No. 07-16-00385-CV, 2017 Tex. App. LEXIS 998, at *8 (Tex. App.—Amarillo Feb. 3, 2017, no pet.) (mem. op.) (per curiam)). The focus is "on a parent's failure to comply with a court order; [subject to the consideration of subsection (d)], the reasons for non-compliance or the degree of compliance generally are not relevant to the analysis." *In re C.F.M.*, 2018 Tex. App. LEXIS 3058, at *8 (citing *In re D.N.*, 405 S.W.3d 863, 877-78 (Tex. App.—Amarillo 2013, no pet.)).

As noted, a caseworker here testified "there [had] not been observed progression" by M.A. on the services set forth in her service plan. Specifically, she told the court M.A. "hadn't been compliant with updating the Department on her changes of residence." M.A. maintained contact with the Department when "she want[ed] to or as she [saw] fit." M.A. failed to maintain stable housing and employment. Significantly, she was not able to remain drug-free during the pendency of this proceeding. Rather, she tested positive on her drug screens or failed to submit to a requested drug screen. The caseworker also testified that M.A. failed to be assessed by a physician or have any evaluations, did not complete her psychological assessment, and did not participate in or complete rational behavioral therapy. M.A. did, however, comply with her prescribed medication and dosages. M.A. did not complete the required parenting classes and failed to initiate inpatient drug rehabilitation.

Although at the time of the final hearing M.A.'s visits with her children were suspended, M.A. testified that up to that point, she had only missed a couple of visits with her children. While those missed visits were due to Covid-19 exposure, she still "video chatted" with the children during that time. She admitted to positive drug screens but said she had been trying to get into another rehabilitation facility.[5] Further, she testified she made attempts to complete some of her other services, including making six phone calls to attempt to schedule her OSAR. She told the court she completed "eight or nine" sessions of individual counseling in Clovis, New Mexico. She also said she completed a

---

[5] While we acknowledge that "mere drug use alone" is not conclusive to support termination of parental rights, we find the evidence presented here proves a causal connection between M.A.'s drug use and endangering her children's welfare. *See In re L.C.L.*, 599 S.W.3d 79, 85 (Tex. App.—14th Dist.] 2020, pet. denied).

psychological evaluation at Mesilla Valley and provided to her caseworker contact information and authorization to obtain her records.[6] M.A. also told the court she was complying with her prescribed medications. However, she admitted she did not attend the required rational behavioral therapy. She said she signed up for it but missed the first class because her internet service was not working properly. She then "forgot about that part of it . . . until recently." She further testified she took a parenting class, but the caseworker told her it would not fulfill the requirements of her service plan because she had taken the class prior to the current Department case. By the time of the final hearing, she had not taken another parenting class to fulfill the requirement. We do note that M.A. also told the court she "recently started working with a carpenter who does flooring . . . ." She also testified she had a place to live and described issues she had with her previous housing. Stable employment and housing were requirements under M.A.'s service plan. From this testimony, it appears she satisfied those requisites. However, in the face of the other evidence before it, the trial court could have, under the requisite standard, found the evidence sufficient to support termination of M.A.'s parental rights under section 161.001(b)(1)(O). We overrule M.A.'s second issue.

### ISSUE THREE—BEST INTEREST

In addition to finding sufficiency of the evidence to support termination under section 161.001(b)(1), we must also find clear and convincing evidence that termination of the parent-child relationship was in the children's best interests. TEX. FAM. CODE ANN. § 161.001(b)(2). There is a strong presumption that the best interests of the children will be served by preserving the parent-child relationship. *In re R.R.*, 209 S.W.3d 112, 116

---

[6] The caseworker testified she had requested those records but never received them.

(Tex. 2006). Prompt and permanent placement of the children in a safe environment is also presumed to be in their best interests. TEX. FAM. CODE ANN. § 263.307(a). A non-exhaustive list of factors to consider in deciding best interest is found at section 263.307(b) of the Family Code. TEX. FAM. CODE ANN. § 263.307(b). The Supreme Court has set out additional factors to consider when determining the best interests of the children. *See Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). Those factors include (1) the desires of the children; (2) the emotional and physical needs of the children now and in the future; (3) the emotional and physical danger to the children now and in the future; (4) the parental abilities of the individual seeking custody; (5) the programs available to assist the individual to promote the best interests of the children; (6) the plans for the children by the individual or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Id.*

Evidence that supports one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the children's best interests. *See In re C.H.,* 89 S.W.3d at 28. *See also In re E.C.R.*, 402 S.W.3d 239, 249-50 (Tex. 2013). The best interest analysis may consider circumstantial evidence, subjective factors, and the totality of the evidence as well as direct evidence. *See In re N.R.T.*, 338 S.W.3d 667, 677 (Tex. App.—Amarillo 2011, no pet.).

M.A. asks this court to "look at the overall circumstances" rather than looking to the "usual *Holley* factor analysis." Those circumstances, M.A. argues, are that there was no evidence of her abuse or neglect of the children. The father had primary custody of

18

the children when they were removed. M.A. was the non-offending parent and the sole basis for termination of her parental rights was failure to complete her services. However, she asserts, she completed several of the services, showing a good faith effort to complete them.

M.A. also acknowledges the Department's concern regarding her drug use and admitted relapse in December 2020. However, evidence of drug use on its own is not sufficient to show endangerment unless it is causally connected to conduct endangering a child. *In re L.C.L.*, 599 S.W.3d 79, 84 (Tex. App.—Houston [14th Dist.] 2020, pet. denied). *See also In re C.R.*, Nos. 07-20-00314-CV, 07-20-00316-CV, 2021 Tex. App. LEXIS 1286, at *8 (Tex. App.—Amarillo Feb. 23, 2021, pet. denied) (mem. op.). She argues there is no evidence of such a causal connection here. As noted above, we disagree.

There is no evidence in the record concerning the children's desires. There is, however, ample evidence of M.A.'s use of drugs throughout the children's lives. That drug use resulted in the children living with M.A.'s stepmother for several years and with the father for quite some time. M.A. was not a suitable placement for the children at any time during the case due to her drug use. At the time of the final hearing, the three children were placed together in a foster home. The Department was "reaching out to relatives to find an appropriate relative that will be able to be placement for all three of the children." Ultimately, the Department is seeking adoption for the three children.

The court had before it the evidence reflecting M.A.'s failure to comply with court-ordered services and the unstable nature of her life. We do acknowledge M.A.'s

testimony that she loves her children "very much" and that all of her visits with the children went well. We also note M.A.'s stepmother testified that M.A. "loves the girls and they love her. Even when they weren't living with her she would always come to see them and, you know, let them know that she loved them." While no one can question the importance love plays in raising children, sometimes the greatest love a parent can have for a child is to relinquish any claim that stands in the way of that child's prosperity.

The stepmother told the court the three children lived with her for about seven years before they went to live with their father. She also testified she and her husband had room for the children in their home in Texaco, New Mexico. They visited with the children "every other week" and "spend as much time as they allow." She answered "Oh, yes. Yes. Anytime[,]" when asked "So as of today are you willing to be placement for these girls, if needed?" She also agreed they were willing to be long-term placement for the children and that they would comply with all court orders.

Despite some evidence in support of preserving M.A.'s parental rights to her children, the caseworker opined it was in the children's best interests that the court terminate M.A.'s parental rights. She based her opinion on the fact that she had not seen any changes in M.A.'s drug use as evinced by M.A.'s positive February 23, 2021 screen. Further, the caseworker believed M.A. failed to show she gained insight from any of the services M.A. completed in New Mexico. She also noted M.A.'s unstable employment history. The caseworker told the court she believed it would be harmful to the emotional well-being of the children if M.A. were to continue to be part of their lives. She did not believe M.A. was capable of providing for the physical and emotional well-being of the

children presently or in the future. M.A. herself testified she did not believe she needed to be sober to be a good parent.

Taking the caseworker's opinion in conjunction with the evidence discussed in the previous section, we find the trial court could have found sufficient evidence, under the requisite standard, to support a finding that termination of M.A.'s parental rights was in the children's best interests. We resolve M.A.'s third issue against her.

### CONCLUSION

Accordingly, we affirm the order of the trial court.


Patrick A. Pirtle
Justice